ORTIZ & ORTIZ, L.L.P.
32-72 Steinway Street
Astoria, New York 11103
Norma E. Ortiz
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re                                                            Chapter 11

JOE'S PLACE OF THE BRONX, NY, INC.,                              Case No. 17-11542-mg

                                        Debtor.
---------------------------------------------------------X

## DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT DATED DEC. 27, 2019

> **DISCLAIMER**
> This is not a solicitation of acceptance or rejection of the plan. Acceptances or rejections may not be solicited until a disclosure statement has been approved by the Court. This disclosure statement is being submitted for approval but has not been approved by the Court.

## I.    INTRODUCTION

This is the second amended disclosure statement ("Disclosure Statement") in the Chapter 11 case of Joe's Place of the Bronx NY, Inc. (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Amended Plan of Reorganization (the "Plan") filed by the Debtor on February 14, 2019. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.

*Your rights may be affected by the Plan and Disclosure Statement.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you*

*do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 8-12 of this Disclosure Statement. The unclassified priority and secured tax claim of the New York State Department of Taxation and Finance ("NYSDTF") shall be paid as follows: Four Thousand Five Hundred Dollars ($4,500.00) a month for 72 months from the Effective Date of the Plan. The New York City Department of Finance ("NYCDOF") holds a priority tax claim in the amount of $26,443.76. Unless otherwise agreed to between NYCDOF and the Debtor, the Debtor shall pay NYCDOF approximately $980 a month for approximately 26 months commencing on the Effective Date of the Plan, with applicable statutory interest, in full satisfaction of its claim. General Unsecured Claims and the Interest Holder are classified in Classes 1 and 2. All Class 1 General Unsecured Claimants will receive payments of no less than 10% of the total claim amount of their allowed claims within 60 months of the Effective Date of the Plan. The interests of the shareholder, Jose Torres, will remain unimpaired.

A.    **Purpose of This Document**

This Disclosure Statement describes:

•    The Debtor and significant events during the bankruptcy case;

•    How the Plan proposes to treat claims of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed);

•    Who can vote on or object to the Plan;

•    What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

•    Why the Debtor believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim or equity interest in a

liquidation of the Debtor's assets; and

•        The effect of confirmation of the Plan on your claim.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement

describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.        **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet approved – referred to as "confirmed"– the Plan described in this

Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or

will not be confirmed.

1.        *Time and Place of the Hearing to Approve This Disclosure Statement*

The hearing at which the Court will determine whether to finally approve this Disclosure

Statement will take place on or after January 28, 2020, at the U.S. Bankruptcy Court, One

Bowling Green, New York, New York  10004.  At that hearing, the court will determine whether

the Disclosure Statement contains adequate information to enable creditors to exercise an

informed vote on the plan. Objections to the adequacy of the information contained in this

Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served

upon Ortiz & Ortiz, L.L.P., 32-72 Steinway Street, Ste. 402, Astoria, New York 11103, the

Office of the U.S. Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, and the

Chambers of Judge Martin Glenn, One Bowling Green, New York, New York 10004.

2.        *Deadline For Voting to Object to and Accept or Reject the Plan*

Once the court approves the adequacy of the Disclosure Statement, if you are entitled to

vote to accept or reject the plan, you will be permitted to vote on the plan by completing an

enclosed ballot and returning the ballot in the enclosed envelope to ORTIZ & ORTIZ, L.L.P.,

32-72 Steinway Street, Ste. 402, Astoria, New York 11103. See <u>Section IV(A)</u> below for a

3

discussion of voting eligibility requirements.

Your ballot must be received by _____, or it will not be counted.

      3.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Norma E. Ortiz, at the address and telephone number below.

      C.    **<u>Disclaimer</u>**

The Court has provided conditional, but not final, approval of this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation. If the Court approves the adequacy of the information contained in the Disclosure Statement, such approval does not constitute an endorsement of the Plan by the Court, or a recommendation that you accept its terms.

## II.    BACKGROUND

      A.    **Description and History of the Debtor and Events Leading to <u>Chapter 11 Filing</u>**

The Debtor has struggled mightily to reorganize its business and place it in the position to seek approval of the Plan. The Debtor has operated a restaurant located at 1841 Westchester Avenue in Bronx County for decades that is known throughout New York City for its Latin food. Its financial troubles began as early as 2010, when it incurred, among other things, a significant sales tax liability to NYSDTF that resulted in penalties and interest of no less than $2.8 million dollars. The Debtor was forced to file a prior Chapter 11 case in 2015 in the Southern District of New York under Case Number 15-12688-mg to attempt to resolve its debt to the NYSDTF, but it failed because it could not generate sufficient profit to propose a feasible plan to the

Bankruptcy Court and its creditors, and its case was dismissed in 2016.  As a result of these difficulties, the Debtor also fell behind on its obligations to its landlord, the Estate of Harry Katz (the "Landlord").

When the NYSDTF threatened to seize the Debtor's restaurant, the Debtor filed its second petition in this case on June 2, 2017 (the "Petition Date").  Since that time, the Debtor has struggled to streamline its operations, improve its cash flow, and resolve its obligations to the Landlord.

### B.    Events Occurring After the Bankruptcy Filing

**1. Negotiations with the Landlord**:  During the course of the last two years, the Landlord has raised repeated issues with the Debtor regarding past due rent, additional rent that had not been previously billed to the Debtor, and questions regarding the roof and equipment contained on the premises. Throughout the case, the Debtor has strived to address each issue and cooperate with the Landlord. The Landlord and the Debtor have entered into no less than sixteen stipulations extending the Debtor's time to assume its lease for the restaurant. The Debtor has satisfied all of the Landlord's requests in connection with its physical premises.

The Debtor and the Landlord entered into an agreement (the "Lease Agreement") dated November 26, 2019 that sets forth a payment schedule for the Debtor to cure all amounts past due under the Lease and the terms under which the Debtor has agreed to assume the Lease. The Lease Agreement is annexed to the Plan as Exhibit A. The Plan assumes the lease with the Landlord. With the Lease intact, which expires in 2027, the Debtor will be able to continue operating and meet its obligations under the Plan. Reaching an acceptable settlement with the Landlord was a necessary component of the Debtor's reorganization.

The terms of the Lease Agreement are as follows:   The Debtor shall continue to pay the

monthly rent and additional rent payments under the Lease.  The Debtor shall cure the past due

amounts under the following payment schedule:

• The Landlord shall have an Allowed Administrative Claim against the Debtor in the

amount of $137,025.53 for unpaid rent and additional rent (the "Arrears").

• The Debtor shall pay all amounts due under the Lease, as they become due, to the

Landlord and comply with the terms of the Lease.  At the present time, the rent, excluding

additional rent charges, is approximately $8,500.00.  The Debtor shall pay an additional amount

per month to the Landlord to cure the Arrears.  The monthly amounts and payment schedule to

cure the Arrears are as follows:

| Month | Year | Year | Year | Year | Year | Year |
|---|---|---|---|---|---|---|
| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
| January | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 |
| February | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 |
| March | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,525.53 |
| April | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | |
| May | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | |
| June | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | |
| July | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | |
| August | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | |
| September | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | |
| October | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | |
| November | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | |
| December | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | |

The payment schedule reflects the Debtor's typical fluctuation in sales income and can be

satisfied by the Debtor.

2.  **Negotiations with NYSDTF**:   The last amended claim filed by the NYSDTF is in the

amount of  $3,103,395.43.  The Debtor could not propose a plan without the NYSDTF's

agreement to accept a substantial reduction in the payment of its claim. In fact, despite the fact

that the NYSDTF could demand full payment of its Claim, it has agreed to accept approximately 10% of the amount due to it to permit the Debtor to remain in business.

The Debtor struggled financially in the first year of its bankruptcy case, and could not propose a viable payment plan to the NYSDTF. However, in 2018, the Debtor made some changes to its operations that helped increase its cash flow, including reducing its payroll and adding a grill that attracted new customers. Once the Debtor was able to show a consistent profit, the Debtor proposed a settlement to NYSDTF of its claim. Because the Debtor's profitability had fluctuated in the past, the Debtor began to set aside funds in its tax account to demonstrate to the NYSDTF that it had the ability to meet the terms of its plan proposal. The Debtor also satisfied any and all administrative claims asserted by the NYSDTF and all other taxing authorities. As a result, the Debtor has accumulated $48,000 in its tax account. The NYSDTF has agreed to accept 72 payments of $4,500.00 a month, or a total of $324,000, in full satisfaction of its secured and priority claims against the Debtor, so long as the Debtor complies with the terms of the Plan. The Debtor's settlement with NYSDTF was the key determining factor in the Debtor's ability to reorganize and propose a payment to all creditors.

**3. Debtor's Improved Profitability**.  During the pendency of the case the Debtor has improved its financial condition and has demonstrated positive cash flow. Although the Debtor's sales fluctuate during the year, it has been able to pay its expenses as they become due and operate at a profit since the last quarter of 2018. The Debtor filed monthly operating reports that demonstrate from January through September 2019, the Debtor has operated at a monthly profit. Attached as Exhibit B are cash flow projections for the next five years that show the positive cash flow necessary to fund the Debtor's Plan. The projections were based upon the Debtor's past and present financial history and the Debtor believes the projections are realistic and

7

accurate. The projections support the Debtor's assertion and belief that it can afford to pay its creditors the payments proposed in the Plan.

**THE DEBTOR NEEDS YOUR VOTE TO ACCEPT THE PLAN TO<br>STAY IN BUSINESS**.

Since the Debtor is required to pay NYSDTF a substantial sum of money monthly, it needs the votes of Class 1 creditors to accept its Plan and permit it to remain in business. If all creditors in this class vote in favor of the Plan, the Debtor has a high likelihood that the Bankruptcy Court will approve the plan and the Debtor can remain in business and make payments under the Plan. But if one or more creditors in these classes rejects the Plan, Bankruptcy law requires that at least two-thirds (2/3) of the dollar amount and greater than one-half (1/2) in number of the voting creditors in these classes accept the Plan.

If the Debtor does not receive the requisite votes, it will not be able to seek confirmation of the Plan and will be forced to either dismiss its Chapter 11 bankruptcy case or convert its case to a Chapter 7 liquidation case and shut its doors. The Debtor believes that only administrative creditors and the NYSDTF will receive  payment of their claims if the Debtor is liquidated in a Chapter 7 case or dismissed. In fact, since NYSDTF has a lien on all of the Debtor's assets for over Three Million Dollars, the Debtor believes that if it is unable to confirm this Plan, it will be required to shut its doors and turnover all of its assets to the NYSDTF. As set forth in Exhibit C, a liquidation of the Debtor's property would yield no more than $103,000.  All these funds would be required to pay administrative creditors and tax claims. A liquidation of the Debtor's assets would yield no payment to Class 1 creditors.

C.    **Debtor's Officer Compensation**

The Debtor proposes to pay its Officer, Jose Torres, an annual salary $40,000 during the

term of the Plan. Prior to the Petition Date, Mr. Torres has often been unable to receive compensation on a regular basis and his salary fluctuated.

      D.    **Significant Events During the Bankruptcy Case**

There were no significant events that occurred after the case was filed other than the issues discussed above.  The Debtor obtained an order setting forth the deadline for creditors to file claims, called a Bar Date, that set April 10, 2019, as the last day for claims to be filed against the Debtor.

      E.    **Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.  It does not believe there are any such claims.

      F.    **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan. The Debtor does not intend to object to any claims at this time.

**III.**    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

      A.    **What is the Purpose of the Plan of Reorganization**?

As required by the Bankruptcy Code, the Plan places claims in various classes and describes the treatment each class will receive. In the Plan, the treatment of claims shall be payment of those claims. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code.  They are not considered impaired and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with the Bankruptcy Code.  As such, the Debtor has not placed the following claims in any class:

1.    **Non-Tax Administrative Expenses and Statutory Fees**.  Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Statutory fees are fees imposed by statute that are not classified as Claims or Administrative expenses.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses and statutory fees be paid on the effective date of the Plan, unless a particular claimant or entity agrees to a different treatment.

The Debtor shall pay all statutory fees due and payable under 28 U.S.C. § 1930(a)(6), plus accrued interest under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements inside and outside of the ordinary course of business until the entry of a final decree, dismissal or conversion of the case to chapter 7.  The Debtor shall also file monthly post-confirmation reports and schedule post-confirmation status conferences on a quarterly basis until entry of a final decree, dismissal of the case or conversion of the case to chapter 7 case.  Within fourteen (14) days after the estate is fully administered and the Bankruptcy Court has discharged the Debtor, the Debtor shall file and serve upon the United States Trustee a closing report.

The following chart lists the Debtor's estimated administrative expenses and statutory fees

10

and their proposed treatment under the Plan:

a.    *Type*:   Professional Fees, Subject to Approval by the Court

*Estimated Amount Owed*:  $20,000 for legal fees for Ortiz & Ortiz,

L.L.P., as Debtor's counsel, above the amount paid as a retainer.

*Proposed Treatment*:  Paid according to separate written

agreement with the Debtor, and according to court order.

b.    *Type*:   Expenses Arising in the Ordinary Course of Business After
the Petition Date

*Estimated Amount Owed*:  None.

*Proposed Treatment*:  Paid in full on the effective date of the

Plan, or according to terms agreed to by the parties.

c.    *Type*:   Value of Goods Received in the Ordinary Course of
Business Within 20 Days Before the Petition Date

*Estimated Amount Owed*:      None

d.    *Type*:   Clerk's Office Fees

*Estimated Amount Owed*:      None

e.    *Type*:   U.S. Trustee's Quarterly Fees

*Estimated Amount Owed*:      None.  If any amounts are due, they
will be paid on or before plan
confirmation.

*Proposed Treatment*:  Paid in full on the effective date of the Plan

**TOTAL DUE ON THE EFFECTIVE DATE**:      $20,000, unless agreed otherwise

**TOTAL DUE AFTER THE EFFECTIVE DATE**:      None or Per Agreement

2.    **Tax Administrative, Priority, and Secured Claims:**

a. *Claim of the NYSDTF*:  The New York State Department of Taxation

11

has agreed to accept $324,000 in full satisfaction of its $3,103,395.43 secured, priority, and administrative claims so long as the Debtor fully complies with the terms of the Plan.

The Debtor shall pay NYSDTF $4,500.00 a month for 72 months commencing on the Effective Date of the Plan in full satisfaction of its claim.

b. *Claim of the NYCDOF*:  The New York City Department of Finance holds a priority tax claim in the amount of 26,443.76. Unless otherwise agreed to between NYCDOF and the Debtor, the Debtor shall pay NYCDOF approximately $980 a month for approximately 26 months commencing on the Effective Date of the Plan, with applicable statutory interest, in full satisfaction of its claim.

## C.        Classes of Claims

The following are the classes set forth in the Plan and the proposed treatment that they will receive under the Plan:

### I.        <u>Class 1 of General Unsecured Creditors</u>

Class 1 General Unsecured Claims are all claims that are not secured by property of the estate and are not entitled to priority under Bankruptcy Code § 507(a).  The Debtor believes there are seven (7) claims in this class.

The following identifies the Plan's proposed treatment of Class 1 Claims:

Description:    All general unsecured claims.

Amount of Claims:  No less than $139,858.26

Treatment:      Paid 10% of Allowed claims over 60 months from the Effective Date in monthly payments of $235.00.

Impaired?      Yes

### II.        <u>Class 2 of the Interest Holder</u>

The sole shareholder of the Debtor, or equity interest holder, is Jose Torres. Mr. Torres's interest in the Debtor will be unimpaired and he will remain the sole owner of the Debtor. If

Class 1 does not accept the plan, the Bankruptcy Court may choose not to confirm this plan because Mr. Torres will retain his interest in the Debtor. In order for the Debtor to confirm a plan over the objection of Class 1, it would need to pay all the claims in this class in full or Mr. Torres would not retain any interest in the Debtor under the Plan unless he provides new value to the Debtor in amount sufficient to persuade the Bankruptcy Court that Mr. Torres is contributing sufficient new value to the Debtor. Although Mr. Torres intends to contribute $20,000 towards the funds needed for the Plan, the Bankruptcy Court may or may not find such a contribution adequate to overcome the rejection by the dissenting class.

### D. Means of Implementing the Plan

#### 1. Source of Plan Payments

Payments and distributions under the Plan will be funded by the following: Debtor's net income from the operation of its restaurant and Mr. Torres's contribution of his personal funds.

#### 2. Post-Confirmation Management

The Debtor's current management will continue post-confirmation. Mr. Torres will remain as the Debtor's president and will manage the Debtor's affairs.

### E. Risk Factors

The proposed Plan has the following risks: The Debtor's income is dependent upon his ability to earn a profit from its operation of a restaurant. The Debtor has maintained a positive cash flow since the last quarter of 2018 and continued operations of the business will provide the greatest recovery to its creditors.

However, the Debtor is not generating sufficient income to pay its creditors in full. The Debtor's sole shareholder has no personal assets of any value and is unable to contribute any property to help fund the plan other than the $20,000 mentioned above. After the Chapter 11

13

case was filed, a divorce action was commenced against Mr. Torres and the divorce court awarded his ex-spouse title to the marital home. The only asset of any value Mr. Torres owns are his shares in the Debtor. If the Plan is not approved by his creditors, Mr. Torres will be unable to confirm the Plan and will be forced to close the restaurant.

**F.  Executory Contracts and Unexpired Leases**

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  The Plan also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in the Plan will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

There are no executory contracts or unexpired leases listed in the Plan, other than the Debtor's Lease with its Landlord.  The Debtor shall assume the Lease.

**G.  Tax Consequences of Plan**

Creditors concerned with how the plan may affect their tax liability should consult with

14

their own accountants, attorneys, and/or advisors.

### H. Release and Injunction

The Plan provides that the Debtor, its officers and directors, and the Debtor's Professionals shall neither have nor incur any liability to any person for any act taken or omitted in connection with the Case, including the formulation and prosecution of the Plan. This release of liability will not apply to any act or omission that was caused by gross negligence or willful misconduct. The Plan also contains an injunction against any actions that could be taken against the Debtor to collect upon Claims discharged under the Plan, such as attempting to collect, sue, or levy against any of the Debtor's property. The injunction provisions are explained in 10.06 of the Plan.

### I. Joe Torres's Personal Tax Liability

Mr. Torres is personally responsible for the taxes due to the NYSDTF. Mr. Torres's personal tax liability has at no time been the subject of the Debtor's bankruptcy case. Counsel to NYSDTF recently informed the Debtor and the Bankruptcy Court that if the Debtor complies with the terms of the Plan, it shall release Mr. Torres of his personal tax liability. However, this agreement is not part of the Plan. However, the agreement benefits the Debtor's creditors in that it permits Mr. Torres to focus all of his efforts on ensuring that the terms of the Plan are met and does not require him to focus on satisfying his personal tax liability to NYSDTF.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

The bankruptcy Bankruptcy Court can not approve – or confirm – the Plan unless it meets the requirements listed in Bankruptcy Code § 1129.  These include the requirements that the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each creditor holder at least

15

as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object to the Plan

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, Class 1 is impaired and the holders of the claims in those classes are therefore entitled to vote to accept or reject the Plan. Since Mr. Torres will retain his interests in the Debtor, Class 2 is unimpaired and deemed to have accepted the Plan. As a result only Class 1 is entitled to vote on the Plan.

### 1.    What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim is not allowed, the creditor holding the claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows

the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case was April 10, 2019.

### 2.    What Is an Impaired Claim?

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is impaired under the Plan. As provided in Section 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.    Who is Not Entitled to Vote?

The holders of the following five types of claims are **not** entitled to vote to accept or reject the Plan:

- holders of claims that have been disallowed by an order of the Court;

- holders of other claims that are not "allowed claims" or (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims in classes that do not receive or retain any value under the Plan; and

- holders of administrative expenses.

However, even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the plan and to the adequacy of the disclosure statement.

### 4.    Who Can Vote in More Than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim. No creditors are entitled to vote in more than one class in this case.

**B.      Votes Necessary to Confirm the Plan**

If impaired classes exist, the Bankruptcy Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by cram down on non-accepting classes, as discussed later in Section B.2.

**1.      Votes Necessary for a Class to Accept the Plan**

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

If a creditor rejects the Plan, but the requisite majority of creditors vote to accept the Plan, the Plan can be imposed on dissenting creditors so long as the Plan meets the Bankruptcy Code's "best interest" test set forth in Section 1129(a)(7). Under the best interest test, a creditor may block plan confirmation if it can show that it would receive less under a plan than it would in a chapter 7 liquidation. In other words, the best interest test ensures that a plan can not provide a creditor less than what it would receive in an liquidation sale of a debtor's assets. In this case, the Debtor's asset value is dwarfed by NYSDTF's secured claim and the Debtor believes the

18

Plan satisfies the best interest test by providing creditors with ten percent of their Allowed

Claims.

### 2.    Treatment of Non-Accepting Classes

Even if one or more impaired classes reject the Plan, the Bankruptcy Court may

nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by

§ 1129(b) of the Code.  A plan that binds non-accepting classes is commonly referred to as a

cram down plan.  The Code allows the Plan to bind non-accepting classes of claims if it meets all

the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of

the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class

that has not voted to accept the Plan.

You should consult your own attorney if a cram down confirmation will affect your

claim, as the variations on this general rule are numerous and complex.

### C.    Liquidation Analysis

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest

holders who do not accept the Plan will receive at least as much under the Plan as such claim

would receive in a Chapter 7 bankruptcy liquidation. Attached as Exhibit C is a copy of the

Debtor's liquidation analysis as of the Petition Date. The Plan provides Class 1 creditors with a

payment of 10% of Allowed Claims over the life of the Plan. If the Debtor's assets were

liquidated as of the Petition Date, Class 1creditors would receive no payment since the Debtor's

assets are inadequate to pay administrative claims and the claim of the NYSDTF. Therefore, the

Plan provides more than creditors would receive if the Debtor's assets were administered under

Chapter 7 of the Bankruptcy Code.

### D.    Feasibility

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes that the Plan is feasible. The Debtor has filed operating reports with the Bankruptcy Court for almost two years, and demonstrated it has improved its financial performance and has the ability to pay its operating expenses and make a profit. As a result, the Debtor's performance during the pendency of the case supports its assertion that it will be able to make its proposed plan payments.

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.  Discharge of Debtor

The Plan provides that when the Bankruptcy Court confirms the Plan, and the Debtor complies with all of the terms of the Plan, the Debtor will be discharged of all Claims against the Debtor that arose prior to the bankruptcy filing. However, this discharge is limited by the terms of the Plan with respect to the claims of the NYSDTF: NYSDTF shall maintain its lien against the Debtor until all plan payments are completed and has the right to assert the full amount of its original claim if the Debtor defaults in its payments to NYSDTF under the Plan.

The holder of the discharged Claims in Class 1 shall be forever barred and precluded from asserting against the Debtor, its assets or property. The Plan and applicable Bankruptcy law provide that the discharge will also serve as an injunction against the commencement or continuation of any action or attempt to recover the Claims discharged by this Plan. In addition, the Plan provides that title to all of the assets of the Debtor shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges and encumbrances of creditors.

### B.         Modification of Plan

20

The Debtor may modify the Plan at any time before confirmation of the Plan.  However, the Bankruptcy Court may require a new disclosure statement and/or a new Plan and re-solicitation of votes on the Plan. Upon request of the Debtor, the United States Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

**C.** **Final Decree**

Once the bankruptcy estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7 or dismissal of the case. The Debtor believes that in a liquidation of its assets, all proceeds of a sale would be used to pay only administrative creditors and the taxing authorities.  No unsecured creditors would receive any payment.

**THE DEBTOR TRULY BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND THE INTEREST HOLDERS AND URGES**

21

**EACH CREDITOR TO SUPPORT CONFIRMATION OF THE PLAN.**


Dated: February 14, 2020
       Astoria, New York

                                      */s/Norma E. Ortiz*
                                      Norma E. Ortiz
                                      Ortiz & Ortiz, L.L.P.
                                        32-72 Steinway Street, Ste. 402
                                        Astoria, New York 11103
                                        Tel. (718) 522-1117
                                        *Attorneys for the Debtor*

**EXHIBIT A**

**EXHIBIT B**

**EXHIBIT C**